Philip M. Black (SBN 308619)
pblack@wolfpopper.com
WOLF POPPER LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111
Tel: 415-745-3232

*Attorneys for Plaintiff and the Proposed Class*
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS TREASURE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHOSEN FOODS LLC,<br><br>        Defendant. | Case No. __'26 CV4606 DMS BJW__<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

Plaintiff Thomas Treasure ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Complaint against Defendant Chosen Foods LLC ("Chosen Foods" or "Defendant"), and based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and a class (or classes) of all other similarly situated persons, as defined below.

2.      This action concerns Defendant's deceptive and unfair tactic of marketing and selling mayonnaise that is purportedly made with avocado oil instead of other oils, but it does not contain avocado oil.  Specifically, its Classic Mayo ("Classic Mayo"; together with other prepared food products claiming to contain exclusively avocado oil, the "Products") says on the front label that it is "made with 100% pure avocado oil" and its ingredient list names avocado oil as its first ingredient and only oil ingredient. However, a recent study published by researchers at UC Davis (the "UC Davis 2026 Study") found that Chosen Foods Classic Mayo contains oils that are not consistent with 100% pure avocado oil.

3.      Customers like Plaintiff purchased the Products because of the representations that it contained avocado oil.  Products such as Classic Mayo have higher prices because they are supposed to contain exclusively avocado oil. Consumers prefer avocado oil as opposed to seed oils and for its neutral flavor profile.  Plaintiff and the other members of the Class (as defined below) would not have purchased Defendant's Products had they known the Products contained other oils besides avocado oil, and have been damaged by overpaying for the Products.

4.      Defendant's conduct as alleged herein violates the unlawful, unfair, and fraudulent prongs of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1770(a)(5), § 1770(a)(9), and § 1770(a)(16); the Maryland

Consumer Protection Act ("MCPA"); and Defendant breached its contract for the sale of goods to Plaintiff and class members.

## PARTIES

5.      Plaintiff Thomas Treasure is a natural person who is a citizen of the United States and who is domiciled in the State of Maryland.

6.      Defendant Chosen Foods LLC is a Delaware corporation headquartered in San Diego, California. Defendant's mailing address is 350 Camino De La Reina Suite 400, San Diego, CA, 92108.

7.      Defendant markets and sells products that claim to be made exclusively with avocado oil to consumers throughout the United States.

8.      A substantial portion of the conduct giving rise to Plaintiff's claims, including the marketing and sale of the Products, took place in, and emanated from, California. In addition to its headquarters located in California, in March 2020, Chosen Foods announced its rebranding efforts to "Celebrate[] Roots in Coastal California and Mexico." https://www.multivu.com/players/English/8697051-chosen-foods-coastal-california-mexico-roots-new-brand-identity/, archived at https://perma.cc/V2UV-JAMU. Chosen Foods also specifically directs people to stores in California to purchase their products. *See, e.g.*, https://www.tiktok.com/@chosenfoods/video/7146278189566872874 (promoting mayonnaise in stores in San Diego, the Bay Area, and the Southeastern United States).

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the class(es) is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is headquartered in this District.

12. Upon information and belief, Defendant has sold the Products in California and nationwide.

## FACTUAL ALLEGATIONS

***Defendant's Products***

13. Chosen Foods is a food company that focuses on products that claim to be avocado oil-based products. These include pourable avocado oil, avocado oil cooking spray, avocado oil dressings, and avocado oil mayonnaises. Its website asserts: "We're on a mission to do good in the world by being good for the world, replacing bad fats with the good fats of 100% Pure Avocado Oil across the kitchen pantry." www.chosenfoods.com, archived at https://perma.cc/5YJ3-MUFW.

14. Defendant claims that it is America's number one avocado oil and avocado oil spray brand, and that its avocado oil is "made without soy or canola oils—just simple, quality ingredients." https://chosenfoods.com/pages/about-us, archived at https://perma.cc/CRP3-9SMF. Defendant also discouraged people from consuming "seed oils." *See, e.g.*, https://www.tiktok.com/@chosenfoods/video/7650212014735822093 (joking that another brand's pre-made dressing would receive a "seed oil foul"); https://www.tiktok.com/@chosenfoods/video/7645386887514950926 (promoting recipes using Chosen Foods products that are "seed oil free"). Defendant claims to be "100% committed to 100% purity." https://chosenfoods.com/pages/purity, archived at https://perma.cc/B82J-YSHF.

15. Refined avocado oil also has a reputation for a neutral flavor profile. Consumers of avocado oil do not want avocado oil that is blended with other oils.

16.    For example, Defendant states on its website that the neutral flavor "won't overpower the taste of your food, making it a versatile ingredient that can be used in a wide range of recipes. It has a mild, buttery taste that enhances the flavors of any dish."    https://chosenfoods.com/blogs/central/how-pure-avocado-oil-is-made-a-step-by-step-overview, archived at https://perma.cc/2CE4-UA5S.    The individual product pages have FAQs, including "Can you taste the avocado oil in Chosen Foods Classic Mayo?," to which Defendant answered "No! Since avocado oil has a neutral taste, you won't be able to taste the avocado oil in Chosen Foods Classic Mayo." https://chosenfoods.com/products/classic-avocado-oil-mayo-32oz-bpa-free-pet, archived at https://perma.cc/4R9L-5D75.

17.    Chosen Foods markets and sells two mayonnaise products that claim to be made with avocado oil in different size and shape containers:  Classic Mayo and Vegan Mayo ("Vegan Mayo"; defined above with the Classic Mayo as the Products). https://chosenfoods.com/collections/healthy-mayo,    archived    at https://perma.cc/8NVM-FTYG.

18.    The front label of the 32 oz. package of Classic Mayo bottle looks like this:



19. The Classic Mayo label clearly informs a consumer that it contains avocado oil. The text "MADE WITH 100% Pure AVOCADO OIL," "GOOD FATS FROM AVOCADOS," and a cartoon image of an avocado are all on the primary display panel. The first and primary ingredient in the ingredient list is avocado oil. It does not list any other oils. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients. The side panel of the package also says "OUR CLEAN & SIMPLE TAKE ON THIS CLASSIC SPREAD IS MADE WITH 100% PURE AVOCADO OIL & IS 100% DELICIOUS. MAYO DREAMS COME TRUE!" Below that it says "SOY & CANOLA OIL FREE."

20. Defendant's website has similar statements that communicate to consumers that their Products are made with avocado oil and only avocado oil. For example, the Classic Mayo page has an image that claims that other mayonnaises are not 100% pure and are mixed with "sketchy ingredients":



- 6 -

https://chosenfoods.com/products/classic-avocado-oil-mayo-32oz-bpa-free-pet. The page also says "Unsweetened, gluten-free, healthy, Certified Non-GMO, and free of soy, canola, and other oils."

21.     Defendant makes similar statements about the Vegan Mayo.  The front label of the 24 ounce package looks like this:

22.     The Vegan Mayo label and website also make it clear that it is supposed to contain avocado oil and not other oils.  *See, e.g.*, https://chosenfoods.com/products/copy-of-vegan-avocado-oil-mayo-24oz-glass-jar, archived at https://perma.cc/W3W3-6SXV.

23.     The first and primary ingredient in the ingredient list for Vegan Mayo is avocado oil.  It does not list any other oils.  It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

24. In addition to mayonnaise, Chosen Foods sells other prepared foods such as salad dressings and marinades that claim to contain 100% pure avocado oil.

25. For example, Defendant states on its website "Savor your salads with Chosen Foods' New Avocado Oil Based Salad Dressings. Made with 100% Pure Avocado Oil and simple ingredients, these flavor-packed dressings are crafted without soy or canola oil and full of good fats from avocados." https://chosenfoods.com/collections/dressings-marinades-made-with-avocado-oil, archived at https://perma.cc/59J3-ZMQ6.

26. Chosen Foods sells a lemon garlic flavored dressing that claims to be made with 100% pure avocado oil (the "Lemon Garlic Dressing & Marinade"). The front label of the 8 ounce package looks like this:



27. The Lemon Garlic Dressing & Marinadehas similar representations that it contains avocado oil. The front label says that it is "MADE WITH *100% Pure AVOCADO OIL*," it has "GOOD FATS FROM AVOCADOS," and it has a cartoon image of an avocado. The first and primary ingredient in the ingredient list for

Lemon Garlic Avocado Dressing is avocado oil. It does not list any other oils. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

28. The website for the Lemon Garlic Dressing & Marinade has additional comments about avocado oil and the lack of other oils. It says that it is "**Made with 100% Pure Avocado Oil** – This clean lemon garlic dressing is packed with good fats from avocados and crafted without soy or canola oil" (bold in original). https://chosenfoods.com/products/chosen-foods-avocado-oil-dressing-marinade-lemon-garlic, archived at https://perma.cc/N8H2-4BGS. There are also FAQs, including the question "What makes Chosen Foods different from other dressings in the market?," to which Defendant answers "Chosen Foods' Dressings are made with 100% Pure Avocado oil and do not contain any seed oils, making these your everyday dressings for any occasion!" The webpage also has a similar image comparing its product to other dressings with "sketchy ingredients" instead of "100% pure avocado oil."

29. Chosen Foods also sells a zesty Italian flavored avocado oil dressing ("Zesty Italian Dressing & Marinade"). The front label of the 8 ounce container of Zesty Italian Dressing & Marinade looks like this:

30.     The Zesty Italian Dressing & Marinade label and website also make it clear that it is supposed to contain avocado oil and not other oils.  *See, e.g.*, https://chosenfoods.com/products/red-wine-italian-dressing-marinade, archived at https://perma.cc/D7PK-ME5L.

31.     The first and primary ingredient in the ingredient list for Zesty Italian Dressing & Marinade is avocado oil.  It does not list any other oils.  It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

***Testing Results***

32.     In 2020, researchers at UC Davis testing 22 domestic and imported products labeled as avocado oil and then issued a report (the "UC Davis 2020 Study"), concluding that 82% of the products tested were either rancid or mixed with other oils.     *See*     https://www.ucdavis.edu/food/news/study-finds-82-percent-avocado-oil-rancid-or-mixed-other-oils, archived at https://perma.cc/JBG9-PTU8;

*see also* Green, Wang, "First report on quality and purity evaluations of avocado oil sold in the US," 116 Food Control 107328 (Oct. 2020), available at https://www.sciencedirect.com/science/article/pii/S0956713520302449?via=ihub. Chosen Foods' product was one of only two brands whose samples were pure and unoxidized at that time. *Id.*

33.    Chosen Foods endorsed this research on its website.  In a discussion of its "Commitment to Purity," Defendant said: "In 2020, UC Davis tested avocado oil brands to see which brands were actually pure & not adulterated with other oils. Chosen Foods was one of only two brands that were verified pure & non-oxidized avocado oils. View this study for more information about purity & real avocado oil brands."    https://chosenfoods.com/pages/purity.    (The website text links to the discussion of the UC Davis 2020 Study at the UC Davis website.)

34.    In 2026,[1] researchers at UC Davis again tested food products that were labeled as containing avocado oil and olive oil (the above-defined UC Davis 2026 Study).  The researchers—who included one of the researchers as the prior UC Davis 2020 Study—concluded that 89% of the products they tested were not consistent with avocado oil and likely had other oils mixed in instead.    *See* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil, archived at https://perma.cc/5HXH-XD5V; Lopez-Alvarez, et al., "Authenticity of avocado and olive oils used as ingredients in commercially processed foods," 6 Applied Food Research 102389 (2026), available at https://www.sciencedirect.com/science/article/pii/S2772502226007274.

35.    Specifically, the study concluded that all of the samples of the Chosen Foods Products—the Classic Mayo, the Vegan Mayo, the Lemon Garlic Dressing &

---

[1] The article was first available online on July 11, 2026.

Marinade, and the Zesty Italian Dressing & Marinade from Chosen Foods (the "Products")—were not "compositionally consistent with authentic oil."[2]

36.    The UC Davis 2026 Study measured authenticity based on the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) (the "Codex"). It measured both fatty acids and sterol markers.  A sample was only considered inconsistent with the requirements in the Codex if more than two measurements exceeded the acceptable amounts of fatty acids and sterol markers by more than 10%.  UC Davis 2026 Study at 2.4, p. 3.

37.    The UC Davis 2026 Study highlighted three fatty acids that are included in the Codex and exhibited the greatest difference between products classified as consistent and inconsistent with authentic avocado oil:  palmitic acid (C16:0), palmitoleic acid (C16:1), and stearic acid (C18:0).  All four of the Products from Defendant sampled in the study (at two samples each, for a total of eight samples) were outside of the Codex ranges for these fatty acids.  *See* UC Davis 2026 Study, Supplemental materials, Table S3: "Fatty acid profiles of all samples."  For example, 4.0% to 17.1% of the fatty acids in avocado oil are supposed to be palmitoleic acid (C16.1), but none of the eight samples from Chosen Foods exceeded 1.0%.

38.    The UC Davis 2026 Study also highlighted three sterol markers that are included in the Codex: campesterol, stigmasterol, and $\Delta$7-avenasterol.  Elevated levels of these three sterol markers are consistent with avocado oil that has been substituted or diluted with other vegetable oils. All four of the Products from Defendant sampled in the study (consisting of eight samples) were outside of the Codex ranges for these sterol markers.  *See* UC Davis 2026 Study, Supplemental

---

[2] The UC Davis website provided a "Media Kit" of materials to accompany the story.  This Media Kit included a document titled "Studied products AFRES.pdf," which stated "Brand information in **Authenticity of avocado and olive oils used as ingredients in commercially processed foods**" (bold in original).  Two samples of each of the Products were tested and given a sample identification number between 45 through 48 and 57 through 60.  *See* https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779

materials, Table S4: "Sterol profiles of all samples." For example, only 0.3% to 2.0% of the sterols in avocado oil are supposed to be stigmasterol, but the lowest sample from the Chosen Foods Products was 5.8% and the rest were between 6.0% and 7.1%.

39. The UC Davis 2026 Study also noted that cis-vaccenic acid (C18:1 (n-7)) is often higher in samples that are otherwise consistent with the Codex requirements. Prior research by one of the authors of the UC Davis 2026 Study concluded that measuring C18:1 (n-7) can be useful to determine whether a product labeled as avocado oil has been adulterated with seed oils such as safflower or sunflower oil. *See* Green, Wang, "Cis-vaccenic acid: New maker to detect seed oil adulteration in avocado oil," 1 Food Chemistry Advances 100107 (2022), available at https://www.sciencedirect.com/science/article/pii/S2772753X22000958?via%3Dihub. For example, less than 0.75% of the fatty acids in safflower oil and less than 1.3% of the fatty acids in sunflower oil are C18:1 (n-7), while 5.5% to 7.5% of the fatty acids in avocado oil are C18:1 (n-7).

40. The UC Davis 2026 Study found that all four of the Chosen Foods Products sampled had C18:1 (n-7) values of 1.2% or 1.3%. This is consistent with sunflower oil and not consistent with avocado oil.

41. Chosen Foods charges a price premium for the Products because they are labeled as containing avocado oil.

42. The UC Davis 2026 Study concluded that "Retail prices showed consistent premiums for products labeled as containing avocado oil or olive oil relative to vegetable oil counterparts." UC Davis 2026 Study, page 4.

43. An advertisement for Chosen Foods posted on TikTok by user Bobby Parrish (@BobbyParrish) specifically compared Chosen Foods' Classic Mayo to Hellman's classic mayonnaise, which he referred to as "the bad mayonnaise." https://www.tiktok.com/@bobbyparrish/video/7344412906836233518.    The

- 13 -

influencer notes that when Chosen Foods was discounted by $3 with a manufacturer rebate at Costco, it was $0.203 per ounce, which is still more expensive than the "bad mayonnaise" at $0.156.  At the original price in the video—$9.49 for 32 ounces—it would be $0.297 per ounce, or almost twice the price of the comparison mayonnaise.

44.    The label and ingredient lists for the Products must identify the ingredients by their common or usual names.  *See* 21 C.F.R. § 101.4(a)(1).

45.    The labels and ingredient lists for the Products claim that they include avocado oil.

46.    The Products contain oils that are not consistent with the usual and customary name of avocado oil.

47.    The Products do not exclusively contain avocado oil.

48.    The Products do not contain 100% pure avocado oil.

49.    The Products do not list all of their ingredients.

***Plaintiff's Experience***

50.    Plaintiff is a consumer who favors products containing avocado oil to the exclusion of other oils due to its taste profile.

51.    Plaintiff purchased Defendant's Classic Mayo several times because of the representation that it contained exclusively avocado oil.

52.    Plaintiff paid a higher price for the Classic Mayo relative to other similar products because it was supposed to contain exclusively avocado oil.

53.    After he learned from the UC Davis 2026 Study that the Classic Mayo does not contain pure avocado oil, he cannot trust that the Classic Mayo or any of the Products would exclusively contain avocado oil.  If he could be sure that the Products did actually exclusively contain avocado oil, he would purchase them again.

- 14 -

## CLASS ACTION ALLEGATIONS

54.    This action is brought by Plaintiff, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

55.    Plaintiff seeks to represent the following class: all persons in the United States who purchased Chosen Foods' Products (the "Class").

56.    Plaintiff also seeks to represent the following subclass: all persons in the State of Maryland who purchased Chosen Foods' Products (the "Subclass").

57.    Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclass.

58.    Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition(s).

59.    Excluded from this Class are Defendant and its officers, directors, and employees, as well as Defendant's affiliates, parents, and subsidiaries and their respective officers, directors, and employees.

60.    The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery.

61.    Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to one or more of the Class or Subclass are:

   i.    Whether Defendant represented that the Products contained avocado oil;

   ii.    Whether the Products contained avocado oil;

   iii.    Whether Defendant represented that the Products did not contain oils other than avocado oil, such as seed oils;

- 15 -

iv.    Whether the Products contained oils other than avocado oil, such as seed oils;

v.    Whether Defendant failed to disclose that the Products contained oils other than avocado oil, such as seed oils;

vi.    Whether Defendant's conduct violates the California Unfair Competition Law;

vii.    Whether Defendant's conduct violates the California Consumer Legal Remedies Act;

viii.    Whether Defendant's conduct violates the Maryland Consumer Protection Act;

ix.    Whether Defendant's wrongful conduct caused Plaintiff and the Class members damages;

x.    The measure and amount of damages suffered by Plaintiff, and members of the Class;

xi.    Whether Defendant's conduct caused it to be unjustly enriched;

xii.    The amount of restitution to which Plaintiff, and members of the Classes are entitled;

xiii.    Whether Plaintiff and members of the Class are entitled to punitive damages;

xiv.    Whether Plaintiff and members of the Class are entitled to equitable relief, injunctive relief, and/or specific performance;

xv.    Whether Plaintiff and members of the Class are entitled to a reasonable award of attorney fees, interest, and costs of suit.

62.    Plaintiff's claims are typical of the claims of the members of each of the Classes he seeks to represent because they were all purchasers of the Products.

63.    Plaintiff will fairly and adequately protect the interests of members of the Class and Subclass and has retained counsel competent and experienced in class

- 16 -

actions and consumer litigation. Plaintiff has no interests antagonistic to or in conflict with those of any Class members.

64. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

65. Defendant has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.

66. Class certification is also appropriate because there is a readily identifiable class and subclass on whose behalf this action can be prosecuted. Class members are readily ascertainable. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

### COUNT I

Violations of the California Unfair Competition Law

Cal. Bus. & Prof. Code §§ 17200, et seq.

*On Behalf of the Class*

67. Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 through 66.

68. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

69. Plaintiff asserts this cause of action against Defendant for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and

misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

70.     Defendant's conduct violates the UCL, as the acts and practices of Defendant constitutes a common and continuing course of conduct by means of "unlawful," "unfair," and "fraudulent" business acts or practices within the meaning of the UCL.

71.     Defendant's conduct is fraudulent, and thus amounts to unfair competition as set forth in the UCL, in that Defendant offered Products for sale that claimed to have 100% pure avocado oil as an ingredient, did not disclose other oils as an ingredient, and actually had either a mixture of avocado oil and other oils or solely other oils. Such misrepresentations and omissions are likely to deceive, and in fact have deceived, thousands of consumers.

72.     Defendant's conduct is unlawful, and thus amounts to unfair competition as set forth in the UCL, in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, as well as California Business & Professions Code § 17500.  The Products' labels also violate the federal requirements for labeling ingredients by their common or usual names.  *See* 21 C.F.R. § 101.4.

73.     Defendant's conduct is unfair, and thus amounts to unfair competition as set forth in the UCL, because its utility to Defendant, if any, is greatly outweighed by the harm it causes to Plaintiff and members of the Class; because it violates established public policy as alleged herein; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and Class members who purchased the Products—which are meant to be eaten—without knowing what was inside.

74.     As described above, Defendant willfully deceived Plaintiff and Class members by misrepresenting the goods it provided and with the intent to induce them to alter their positions to their injury. Defendant's representations were untrue and misleading, and Defendant knew, or by exercising reasonable care should have

known, such representations were untrue and misleading. Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. Therefore, the Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

75.     As a direct and proximate cause of Defendant's violations of the UCL, Plaintiff and members of the Class suffered an injury in fact and have suffered monetary harm. Defendant, on the other hand, has been unjustly enriched. The Court should impose a constructive trust and should require Defendant to make restitution to Plaintiffs and the Class and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

76.     Plaintiff and the Class seek equitable relief because they have no other adequate remedy at law. Legal remedies available to Plaintiff and the Class are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs and Class members failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal

remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal remedies, which are as of yet uncertain.

77.    Defendant's unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiff and the Class in that the Defendant continues to sell the Products with inaccurate labels. Legal remedies available to Plaintiff and Class members are inadequate because they do not address likely future harms. Plaintiff further seeks an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

78.    Plaintiff and the Class seek equitable relief because they have no other adequate remedy at law.

### COUNT II

Violations of the California Consumer Legal Remedies Act

Cal. Civ. Code §§ 1750, et seq.

*On Behalf of the Class*

79.    Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 through 66.

80.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

81.    The conduct of Defendant alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA").

82.    Defendant is a person as defined by Cal. Civ. Code § 1761(c).

83.    Plaintiff and Class members are consumers as defined by Cal. Civ. Code § 1761(d).

84.    Chosen Foods' Products, described above, constitute goods as defined by Cal. Civ. Code § 1761(a).

85.    Plaintiff's purchases were transactions under Cal. Civ. Code § 1761(e).

86. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer," which, among other instances enumerated in the CLRA, include: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …." (§ 1770(a)(5)); or "Advertising goods or services with intent not to sell them as advertised" (§ 1770(a)(9)); or "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (§ 1770(a)(16)).

87. Defendant violated Cal. Civ. Code § 1770(a)(5) by misrepresenting the characteristics and ingredients of the Products.

88. Defendant violated Cal. Civ. Code § 1770(a)(9) by falsely advertising the Products as having avocado oil, of not having other oils, and failing to disclose the presence of other oils.

89. Defendant violated Cal. Civ. Code § 1770(a)(16) by representing that it would provide Products that contained avocado oil and not seed oils and it did not.

90. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendant's goods and services. Plaintiff and Class members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

91. Plaintiff and the other members of the Class have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

92. Plaintiff is entitled to pursue a claim against Defendant on behalf of the Class to enjoin Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

- 21 -

93. Pursuant to Cal. Civ. Code § 1782, Plaintiff is serving on Defendants a CLRA notice letter. If Defendant fails to rectify these issues within the time period specified therein, Plaintiff will amend this Complaint, as permitted thereby, to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

## COUNT III

### Breach of Maryland Consumer Protection Act

*On Behalf of the Subclass*

94. Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 through 66.

95. Plaintiff brings this claim individually and on behalf of the members of the Subclass against Chosen Foods.

96. The conduct of Defendant alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Maryland Consumer Protection Act, MD Commercial Law Code § 13 ("MCPA").

97. Defendant is a person as defined by Md. Code Ann., Com. Law § 13-101(h).

98. Plaintiff and Subclass members are consumers as defined by Md. Code Ann., Com. Law § 13-101(2).

99. The MCPA prohibits "Unfair, abusive, or deceptive trade practices," including "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" (§ 13-301(1)); a "Representation that: Consumer goods . . . have a . . . characteristic, ingredient, use, benefit, or quantity which they do not have" (§ 13-301(2)); and "Failure to state a material fact if the failure deceives or tends to deceive" (§ 13-301(3)).

100. Defendant violated § 13-301(1) by making misleading statements about the Products.

- 22 -

101.  Defendant violated § 13-301(2) by misrepresenting the characteristics and ingredients of the Products.

102.  Defendant violated § 13-301(3) by failing to properly describe the Products.

103.  The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendant's goods. Plaintiff and Subclass members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

104.  Plaintiff and the other members of the Subclass have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the MCPA.

105.  Plaintiff and the other members of the Subclass are entitled to recover their damages and reasonable attorney's fees from Defendant pursuant to § 13-408.

## COUNT IV

Breach of Contract

*On Behalf of the Class*

106.  Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 through 66.

107.  Plaintiff brings this claim individually and on behalf of the members of the Class.

108.  As alleged above, Defendant promised to sell its Products with pure avocado oil and not other oils.

109.  Plaintiff and the Class members purchased the Products pursuant to that promise.

110.  Defendant breached its contract with Plaintiff and Class members by failing to providing Products with pure avocado oil and instead providing products that contained other oil.

- 23 -

111. Plaintiffs and the other members of the Class were injured and suffered damages as a direct and proximate result of Defendant's breach of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class and Subclass, requests that the Court award the following relief:

112. Certify this action as a class action, appoint Plaintiff as the Class representative, and designate the undersigned as Class counsel;

113. Declare Defendant's conduct unlawful;

114. Enjoin Defendant from the unlawful conduct alleged herein;

115. Award Plaintiff and the Classes damages under common law and/or by statute, including treble and/or punitive damages;

116. Award Plaintiff and the Classes restitution and/or disgorgement;

117. Award Plaintiff attorneys' fees, costs, and pre-judgment and post-judgment interest; and

118. Grant such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues so triable in the present action.

DATED: August 12, 2026

Respectfully submitted,

By: */s/ Philip M. Black*
    Philip M. Black

Philip M. Black (SBN 308619)
pblack@wolfpopper.com
WOLF POPPER LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111
Telephone: 415.745.3232

- 24 -

Chet B. Waldman (*pro hac vice* application to be filed)
cwaldman@wolfpopper.com
Matthew Insley-Pruitt (*pro hac vice* application to be filed)
minsley-pruitt@wolfpopper.com
WOLF POPPER LLP
570 Lexington Avenue
New York, NY 10022
Telephone: 212.759.4600

*Counsel for Plaintiff and the Proposed Classes*

- 25 -